IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| DALE EVERETT HARDT and SCOTT WHITISH,<br><br>         Plaintiffs,<br>     v.<br><br>CITY OF PORTLAND, MINGUS MAPPS, TED WHEELER, CARMEN RUBIO, DAN RYAN, and RENE GONZALEZ,<br><br>         Defendants. | Case No.: 3:23-cv-01980-AN<br><br>OPINION AND ORDER |

*Pro se* plaintiffs Dale Everett Hardt and Scott Whitish bring this action against defendants City of Portland (the "City"), Mingus Mapps, Ted Wheeler, Carmen Rubio, Dan Ryan, and Rene Gonzalez, alleging violations of the Eighth and Fourteenth Amendments and breach of contract. Hardt originally filed this case in Multnomah County Circuit Court, but defendants removed the case to this Court under federal question jurisdiction.

On January 8, 2024, Hardt filed a Motion for Preliminary Injunction, ECF [10]. On February 5, 2024, the City filed a Motion to Dismiss, ECF [21]. On February 12, 2024, the individual defendants joined the City's Motion to Dismiss, ECF [24]. On March 15, 2024, Hardt filed a Motion to Expedite, ECF [30], seeking oral argument on the preliminary injunction motion. Because the Court finds that, after reviewing the parties' pleadings, oral argument will not help resolve the motion for preliminary injunction, plaintiffs' Motion to Expedite is DENIED. Local R. 7-1(d). Hardt's Motion for Preliminary Injunction is DENIED. The City's Motion to Dismiss, joined by the individual defendants, is GRANTED.

**LEGAL STANDARD**

A.   **Motion for Preliminary Injunction**

A preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). To obtain a preliminary injunction, the plaintiff must show that: (1) the plaintiff is likely to

succeed on the merits; (2) the plaintiff is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in the favor of the plaintiff; and (4) an injunction is in the public interest. *Id.* at 20. If there are "serious questions going to the merits and a hardship balance that tips sharply toward the plaintiff," as well as a showing that the plaintiff will suffer irreparable harm and the injunction is in the public interest, then a preliminary injunction may still issue. *All. For The Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011).

**B.      Motion to Dismiss**

A motion to dismiss for lack of subject matter jurisdiction is properly brought under Federal Rule of Civil Procedure 12(b)(1) to challenge a plaintiff's Article III standing to bring the case. *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). To establish Article III standing, a plaintiff must show: "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Env't Servs., Inc.*, 528 U.S. 167, 180-81 (2000). Each element "must be supported . . . with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

At the motion to dismiss stage, the court "must accept as true all material allegations of the complaint and must construe the complaint in favor of the complaining party." *Warth v. Seldin*, 422 U.S. 490, 501 (1975). At the pleading stage, "general factual allegations of injury resulting from the defendant's conduct may suffice," but "[a] plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Maya*, 658 F.3d at 1068-69 (internal quotation marks omitted).

## BACKGROUND

Plaintiffs' claims are related to a street encampment located in Portland, Oregon where unhoused individuals are presently living. Am. Compl., ECF [15], ¶¶ 1-2. Plaintiffs allege that defendants have "consistently maintained" the camp "for several years without abatement." *Id.* ¶ 2. Hardt has spent "significant amounts of money to fortify his residence" in response to "the unstable and unregulated

activities of the residents of the camp." *Id.* Whitish allegedly "was forced to engage in a dangerous encounter with one resident of the illegal camp which resulted in damage to his vehicle." *Id.* ¶ 1.

Plaintiffs allege that though it is "illegal to urinate, defecate, or dispose of hazardous waste in public spaces," defendants have "knowingly housed thousands of individuals in unsafe, unregulated, and unsupported encampments" that lack "basic necessities" such as "toilets, running water, and trash service." *Id.* ¶ 3. Plaintiffs allege that this forces "the campers to spread disease and hazardous waste in areas the plaintiffs traverse regularly." *Id.* Plaintiffs allege that a disease, Shigella,[1] has been spreading throughout the camp and a local business. *Id.* ¶ 6. Hardt "has a compromised immune system and no longer feels comfortable entering" the business where a worker contracted the disease. *Id.*

Plaintiffs allege that "[i]t is illegal to camp in public spaces inside city limits," and have "consistently requested that the camp . . . be removed," but defendants "have refused to remove it." *Id.* ¶ 4. Hardt filed an application on August 25, 2023 with the Parks Department, requesting that Kelly Point Park be used for "Emergency tent camping." *Id.* ¶ 9. The request was denied, and Hardt made two more requests to have the application approved by the city council. *Id.* Those requests were denied. *Id.*

During the election period of 2022, plaintiffs allege that defendant Wheeler "announced on public television that three mass camps would be opened by the end of 2023 that would significantly eliminate the street camping crisis." *Id.* ¶ 8. Plaintiffs allege that "[t]his was an intentionally deliberate promise that [Wheeler] did not fulfill in any significant way." *Id.*

## DISCUSSION

**A.    Motion for Preliminary Injunction**

Hardt[2] seeks a preliminary injunction that would prohibit defendants from "illegally housing individuals unsafely on public property in a manner that threatens the plaintiff and the public at

---

[1] Shigella bacteria can lead to infections called "shigellosis." Shigella – *Shigellosis: Questions & Answers*, CTRS. FOR DISEASE CONTROL & PREVENTION, https://www.cdc.gov/shigella/general-information.html (last reviewed Apr. 6, 2023). Generally, individuals with shigellosis improve without antibiotic treatment in five to seven days. *Id.*

[2] Hardt filed the Motion for Preliminary Injunction before Whitish was added as a plaintiff; thus, Whitish is not represented in the requested injunctive relief.

large." Pl.'s Mot. for Preliminary Inj. ("Pl.'s Mot. for Prelim. Inj."), ECF [10], at 1. Specifically, plaintiff asks this Court to require defendants to "provide[ ] toilets, running water, or trash services to the illegal campsites" in Portland, Oregon. *Id.*

Because plaintiffs seek injunctive relief that would "'order[ ] a responsible party to 'take action,'" it is a mandatory injunction. *Garcia v. Google, Inc.*, 786 F.3d 733, 741 (9th Cir. 2015) (quoting *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009)). Mandatory injunctions are particularly disfavored because they go "well beyond simply maintaining the status quo." *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1320 (9th Cir. 1994). Thus, a "district court should deny such relief 'unless the facts and law clearly favor the moving party.'" *Id.* (quoting *Anderson v. United States*, 612 F.2d 1112, 1114 (9th Cir. 1979)). Put simply, mandatory injunctions "should not issue in 'doubtful cases.'" *Garcia*, 786 F.3d at 740 (quoting *Park Vill. Apartment Tenants Ass'n v. Mortimer Howard Tr.*, 636 F.3d 1150, 1160 (9th Cir. 2011)).

1. *Likelihood of Success on the Merits*

Hardt's motion was filed before the Amended Complaint, which added new claims. However, all parties have treated the Amended Complaint as the operative complaint; therefore, the Court relies on the claims in the Amended Complaint to assess Hardt's motion. The Amended Complaint asserts three claims: (1) violation of the Cruel and Unusual Punishment Clause of the Eighth Amendment; (2) violation of the Equal Protection Clause of the Fourteenth Amendment; and (3) breach of contract. These claims are addressed in turn.

a. Eight Amendment Violation

Though the factual basis for this claim is not delineated, the Court understands this claim to allege that defendants are violating plaintiffs' rights to be free from cruel and unusual punishment by "forc[ing] human beings to live in camps that do not provide the services that are standard for human cohabitation," by forcing plaintiffs to "exist in an environment where danger is present in the illegal campers themselves and the diseases spread by the unsafe housing practices of the [defendants]," and by "[i]ntentionally refusing to end the threat." Am. Compl. ¶¶ 5, 7. In essence, plaintiffs bring three Eighth

Amendment claims: one on behalf of those living in the camps, and two on behalf of themselves. However, these alleged facts are insufficient to establish that the law and facts clearly favor plaintiffs' position.

As for plaintiffs' first claim, defendants aptly point out that plaintiffs likely lack standing to bring this claim on behalf of unhoused individuals. Under Article III, a plaintiff must show: "(1) . . . an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth*, 528 U.S. at 180-81. Here, plaintiffs' alleged injury is based on injuries allegedly experienced by the unhoused individuals living in the camps. Hardt has not alleged that he is living in a camp in these conditions. Similarly, though Whitish has indicated that he is presently unhoused, he has stated that he is living in an RV, not an encampment. Resp. to Defs.' Objs., ECF [31], at 1. Accordingly, neither Hardt nor Whitish can likely assert camp conditions as an injury under the Eighth Amendment. *See Warth*, 422 U.S. at 499 ("[T]he plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.").

As for plaintiffs' claim on behalf of themselves, the Eighth Amendment is usually inapplicable outside of the criminal process. *See Ingraham v. Wright*, 430 U.S. 651, 664-68 (1977). That is, Eighth Amendment claims are generally reserved to claims related to "criminal punishments." *Id.* at 668. Plaintiffs do not allege that they have been charged or convicted with a crime, or that the circumstances allegedly causing them harm have been imposed upon them by defendants as punishment for a crime. As such, the law and facts do not clearly favor plaintiffs' positions.

b.      Fourteenth Amendment Violation

The complaint appears to allege that defendants are violating plaintiffs' right to equal protection under the law by: (1) "Forcing/allowing [the unhoused individuals] to break laws intended to protect the plaintiffs," such as laws prohibiting "urinat[ing], defecat[ing], or dispos[ing] of hazardous waste in public spaces"; (2) "effectively protect[ing] and control[ling] the camps" by "intentionally disregard[ing] various camping bans"; (3) "[i]ntentionally refusing to end the threat"; and (4) denying Hardt's "application

5

to have Kelly Point Park used for Emergency tent camping" on the basis that camping is illegal in public spaces. Am. Compl. ¶¶ 3, 4, 7, 9. In essence, the Court understands plaintiffs' Equal Protection claims to be based on defendants' allegedly inequitable application of the law.

An Equal Protection claim may be brought under a "lack of enforcement of the law" theory where "enforcement of the law is done selectively for a discriminatory purpose and with a discriminatory effect." *R.R. 1900, LLC v. City of Sacramento*, 604 F. Supp. 3d 968, 977 (E.D. Cal. 2022) (citing *Lacy v. Maricopa Cnty.*, 693 F.3d 896, 920 (9th Cir. 2012)). To make out such a claim, the plaintiff must allege that "a law was enforced against the plaintiff, but not against other similarly situated individuals," and that the defendant enforced the law against the plaintiff "'on the basis of an impermissible ground such as race, religion or exercise of constitutional rights.'" *Id.* (quoting *Lacy*, 693 F.3d at 922).

Plaintiffs have not alleged that defendants enforced any laws against plaintiffs that they decline to enforce against unhoused individuals. Even if plaintiffs had made such an allegation, they have not alleged that such selective enforcement was due to a discriminatory purpose or with a discriminatory effect. Therefore, plaintiffs have not demonstrated that the law and facts clearly favor their position.

      c.      Breach of Contract

Finally, plaintiffs allege a breach of contract claim premised on an alleged campaign promise made by defendant Wheeler during the 2022 election period. Plaintiffs allege that, during his political campaign, Wheeler "announced on public television that three mass camps would be opened by the end of 2023 that would significantly eliminate the street camping crisis." Am. Compl. ¶ 8. Plaintiffs allege that Wheeler's statement was an "intentionally deliberate promise that [Wheeler] did not fulfill in any significant way," thus, Wheeler committed a "deliberate and negligently deceptive breach of contract that caused unnecessary harm and trauma." *Id.*

Generally, a plaintiff bringing a breach of contract claim must show: (1) the existence of a contract; (2) the relevant contract terms; (3) that the plaintiff fully performed and did not breach the contract; and (4) that the defendant breached the contract terms resulting in damage to the plaintiff. *Matchniff v. Great Nw. Ins. Co.*, 224 F. Supp. 3d 1119, 1124 (D. Or. 2016). As alleged, the Court

understands plaintiffs' breach of contract claim to arise under a promissory estoppel theory because plaintiffs do not allege the existence of a written contract or traditional contractual remedies. *See Neiss v. Ehlers*, 135 Or. App. 218, 228, 899 P.2d 700 (1995).

A promissory estoppel theory still requires the existence of an enforceable promise. *Glob. Exec. Mgmt. Sols., Inc. v. Int'l Bus. Machs. Corp.*, 260 F. Supp. 3d 1345, 1381 (D. Or. 2017). Plaintiffs have not alleged facts that support the inference that Wheeler made this statement specifically to plaintiffs such that he would have "reasonably foresee[n]" that his statement "would induce conduct of the kind that occurred." *Id.* Rather, plaintiffs' base their claim on a statement that Wheeler made on television to a large, unknown audience in the course of a political campaign. Plaintiffs provide no legal authority for the proposition that political statements made during election campaigns constitute enforceable promises; indeed, courts have long held that such statements are not enforceable promises under similar theories. *See St. John's United Church of Christ v. F.A.A.*, 550 F.3d 1168, 1170 (D.C. Cir. 2008) (noting that political promises have "no legal force whatsoever"); *East Side Plating, Inc. v. City of Portland*, No. 3:18-cv-01664-YY, 2019 WL 3979658, at *6 (D. Or. July 11, 2019) (holding that statements made by city commissioners were "political promises" not enforceable promises); *Weinstein v. Trump*, No. 17 Civ. 1018 (GBD), 2017 WL 6544635, at *4 n.5 (S.D.N.Y. Dec. 21, 2017) ("[O]nce a candidate is elected to office, it is for the politicians and the people they represent—not the courts—to decide which campaign promises will be fulfilled and which will become abandoned rhetoric."); *United States v. Washington*, 887 F. Supp. 2d 1077, 1100 (D. Mont. 2012) (holding that "public statements were not promises but rather statements of principle and intent in the political realm" (internal quotation marks omitted)); *Berg v. Obama*, 574 F. Supp. 2d 509, 529 (E.D. Penn. 2008) ("[O]ur political system could not function if every political message articulated by a campaign could be characterized as a legally binding contract enforceable by individual voters."); *May v. Kennard Indep. Sch. Dist.*, No. 9:96-CV-256, 1996 WL 768039, at *7 (E.D. Tex. Nov. 22, 1996) ("A political campaign promise is legally insufficient to create a binding contract unless it is so intended by the promisor and promisee.").

Because plaintiffs have not alleged facts indicating the existence of an enforceable promise, they have not demonstrated that the law and facts clearly favor their position.

2. *Remaining Winter Factors*

Because plaintiffs have failed to meet the threshold showing that the facts and law clearly favor their positions, this Court need not consider the other preliminary injunction factors. *California v. Azar*, 911 F.3d 558, 575 (9th Cir. 2018). Plaintiffs have not established that they are entitled to the "extraordinary remedy" of a preliminary injunction.

**B.    Motions to Dismiss**[3]

Defendants move to dismiss the complaint with prejudice on two bases: (1) plaintiffs have not alleged facts that could establish standing; and (2) in the alternative, plaintiffs have failed to state a claim upon which relief can be granted. Defendants also request that the Court take judicial notice of filings made in *Hardt v. City of Portland*, No. 3:21-cv-01515-MO, a case that Hardt initiated in 2021, which was dismissed, *sua sponte* by the court. Defendants' request is granted, and the Court takes judicial notice of Exhibits 3, 4, and 5 attached to the Declaration of Elsa Haag ("Haag Decl."), ECF [17]. *See Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) ("In ruling on a 12(b)(6) motion, a court may generally consider . . . matters properly subject to judicial notice."). Because the Court finds the standing argument dispositive, it declines to address defendants' arguments on failure to state a claim.

As stated previously, to establish standing under Article III, a plaintiff must show: "(1) . . . an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the*

---

[3] As a housekeeping matter, Hardt filed a response to the City's motion to dismiss, and the individual defendants' joinder of that motion. Neither response was signed by Whitish. Whitish signed the amended complaint and stated that he "appoint[ed] Dale Hardt as the legal representative of this case with full authority to make all filings, accept service, and make settlements on my behalf." Am. Compl. 5. However, Hardt is, to the Court's knowledge, not a licensed attorney authorized to provide legal representation, and Federal Rule of Civil Procedure 11(a) requires that "[e]very pleading, written motion, and other paper must be signed . . . by a party personally if the party is unrepresented." Because Whitish did not sign either response to the motions to dismiss, the Court construes all arguments within the responses as solely made by Hardt.

*Earth*, 528 U.S. at 180-81.  In the absence of Article III standing, a federal court lacks subject matter jurisdiction over the suit.  *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004).

Defendants argue that plaintiffs cannot establish standing because plaintiffs have not shown that they suffered an injury, or that any alleged injury is fairly traceable to defendants.  An "injury in fact" is an invasion of a plaintiff's legally protected interest that is "concrete and particularized," and "actual or imminent."  *Friends of the Earth*, 528 U.S. at 180.  A "particularized" injury "must affect the plaintiff in a personal and individual way."  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (internal quotation marks omitted).  A "concrete" injury "must actually exist," meaning abstract or theoretical concerns do not constitute injuries.  *Id.*  Alleged injuries are not fairly traceable to a defendant's actions if they are "the result of independent action of some third party not before the court."  *Defs. of Wildlife*, 504 U.S. at 560.  Further, the "fairly traceable" element requires more than a showing of a "chain of speculative contingencies" to establish standing.  *Lee v. State of Oregon*, 107 F.3d 1382, 1389 (9th Cir. 1997).

Defendants identify plaintiffs' alleged harms as: (1) Whitish's windshield being broken by a "resident of the illegal camp"; Hardt's incurred costs to "'fortify his residence'"; (3) Hardt's cost of purchasing tennis shoes to "'chase down thieves stealing packages and running to the safety of the camp'"; and (4) Hardt's "generalized heightened risk of contracting shigella."  Defs.' Mot. to Dismiss ("Defs.' Mot."), ECF [21], at 11 (quoting Am. Compl. ¶¶ 1,2).  Defendants argue that, though Whitish's alleged harm may constitute an injury in fact, it is not fairly traceable to defendants, and Hardt's alleged harms are unrelated to any legally protected interest and identify only a general concern about the risk of hypothetical future harm.  Further, to the extent plaintiffs allege harms related to the general public or unhoused individuals, defendants argue that these are not particularized harms because they do not personally and individually affect plaintiffs.

Defendants also argue that plaintiffs' alleged harms are not fairly traceable to defendants' actions because the allegations rely on the claim that the City is "'housing' individuals and 'maintain[ing]' the illegal camp at North Lombard and Montana and that *residents* of that camp caused the alleged harms."  Defs.' Mot. 12.  Defendants deny maintaining unsanctioned campsites on sidewalks or other public property

9

and argue that the specific encampment mentioned in the complaint is actually located on property owned by the State of Oregon—not the City. Further, defendants argue that they cannot be held liable for the "independent action(s) of third parties not before the court." *Id.* at 13.

As an initial matter, the Court acknowledges that plaintiffs have not clearly articulated which alleged harms are associated with each federal claim. Because *pro se* pleadings are to be construed liberally, the Court considers the alleged harms in the context of both constitutional claims, as applicable. Plaintiffs' alleged harms can be distilled into three categories: (1) harms allegedly suffered by nonparties; (2) harms allegedly suffered by plaintiffs from unhoused individuals' conduct; and (3) harms allegedly suffered by plaintiffs from defendants' direct conduct.

1. *Nonparties' Alleged Harms*

The Court agrees that the alleged harms that plaintiffs contend are experienced by unhoused individuals or the general public are insufficient to confer standing. The Court has already highlighted that "[a] plaintiff . . . cannot rest his claim to relief on the legal rights or interests of third parties." *Warth*, 422 U.S. at 499. Although Hardt argues that "every citizen of the United States of America has an obligation to Uphold and Defend the United States Constitution," Hardt's Resp. to Mot to Dismiss ("Hardt's Resp."), ECF [25], at 3, a litigant raising only a general "grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy," *Defs. of Wildlife*, 504 U.S. at 573-74.

2. *Plaintiffs' Alleged Harms from Unhoused Individuals*

The Court also agrees that the vast majority of conduct that plaintiffs allege directly caused them harm derives from the actions of unhoused individuals, not defendants. Assuming, without deciding, that plaintiffs could assert an injury in fact based on unhoused individuals' conduct, Hardt has not demonstrated that such conduct is fairly traceable to defendants. Although Hardt argues that defendants "control" the camps and "intentionally prevent" removal of camps, he has not demonstrated that defendants encouraged, instigated, or otherwise enabled the unhoused individuals' conduct. Hardt's.' Resp. 1, 3; *see*

*Hunters Cap. LLC v. City of Seattle*, 499 F. Supp. 3d 888, 902 (W.D. Wash. 2020) (holding that "the City's *affirmative* actions exposed [plaintiffs] to actual, particularized harm that they otherwise would not have faced" (emphasis added)). Put another way, Hardt has not shown that defendants acted in a manner that would diminish or undermine the independence of the unhoused individuals' actions. Thus, plaintiffs' alleged harms derived from unhoused individuals' actions are insufficient to establish standing in this case.

       3.      *Plaintiffs' Alleged Harm from Defendants' Conduct*

Finally, Hardt argues that defendants' specific conduct causes plaintiffs harm, arguing that "defendants' failure to remove the camp allowed dangerous individuals to reside illegally in close proximity to the plaintiffs" and caused plaintiffs "extreme emotional distress," as well as the economic losses detailed above. Hardt's Resp. 1, 5. Put succinctly, Hardt argues that defendants failed to enforce "the law [that] says the camp is illegal" by "remov[ing] the illegal encampment." *Id.* at 4. This, too, is an insufficient basis to establish standing.

An "asserted right to have the Government act in accordance with law is not sufficient, standing alone, to confer jurisdiction on a federal court." *Allen v. Wright*, 468 U.S. 737, 754 (1984). This is, in part, because a private citizen "lacks a judicially cognizable interest in the prosecution . . . of another" and thus "lacks standing to contest the policies of the prosecuting authority when he himself is neither prosecuted nor threatened with prosecution." *United States v. Texas*, 599 U.S. 670, 677 (2023) (quoting *Linda R. S. v. Richard D.*, 410 U.S. 614, 619 (1973)).

Plaintiffs have not alleged that they themselves have been prosecuted, or threatened with prosecution, under any of the laws that they allege defendants are not enforcing against unhoused individuals. As such, plaintiffs' alleged harms connected to defendants' alleged failure to enforce the law are insufficient to establish standing to bring this case, and, thus, this Court lacks subject matter jurisdiction to hear plaintiffs' federal claims.

**C.**    **Supplemental Jurisdiction**

Having determined that this Court lacks subject matter jurisdiction over plaintiffs' federal claims, plaintiffs' breach of contract claim remains. When a district court has dismissed all claims over

which it has original jurisdiction, it may decline to exercise supplemental jurisdiction over any remaining state law claims. 28 U.S.C. § 1367(c)(3). If the federal claims are dismissed before trial, the district court must consider "judicial economy, convenience, fairness, and comity" to determine whether exercising supplemental jurisdiction over the remaining state law claims is appropriate. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). Usually, those factors "will point toward declining to exercise jurisdiction over the remaining state-law claims." *Id.* Having considered the relevant factors, the Court declines to exercise its supplemental jurisdiction in this case.

Two final matters must be addressed. First, defendants seek dismissal with prejudice. Generally, dismissal for lack of subject matter jurisdiction should be made without prejudice. *Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 656 (9th Cir. 2017). The Ninth Circuit has maintained this rule, even when dismissal is based on lack of standing, because "the merits have not been considered" before dismissal and "[p]laintiffs could allege post-effective-date facts that might support standing." *Id.* Defendants provide little explanation for requesting that this case be dismissed with prejudice, though they note that Hardt's 2021 action in federal court was dismissed with prejudice. Defs.' Mot. 6; Haag Decl, Ex. 5. However, the 2021 action was dismissed with prejudice after Judge Mosman found Hardt's allegations "to be without any basis in law or fact." Haag Decl., Ex. 5, at 1. As such, that dismissal was based on a consideration of the merits of Hardt's claims. In light of Ninth Circuit precedent, the Court declines to dismiss plaintiffs' case with prejudice, but will deny leave to amend because, at this time, no amendment to the complaint could establish standing.

The second issue is raised by Hardt. At various points in his response, Hardt indicates that he believes dismissal would be inappropriate because plaintiffs would not have an opportunity to "stand before a jury to present their case" or have their case "reviewed before a jury," and there are matters that he believes are appropriate for a jury determination. Hardt's Resp. 2-5. The Court understands Hardt's beliefs to be based on the right to a jury trial enumerated in the Seventh Amendment.

While the Seventh Amendment undoubtedly confers such a right, it is not unequivocal. The Court has determined that it lacks subject matter jurisdiction to hear this case. When a federal court

lacks subject matter jurisdiction, it "cannot proceed at all in any cause." *Steel Co v. Citizens for a Better Env't.*, 523 U.S. 83, 94 (1998) (internal quotation marks omitted). "Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Id.* (internal quotation marks omitted). Put simply, this case cannot proceed to a jury trial because this Court lacks authority to continue adjudicating it and is required to dismiss the case.

## CONCLUSION

Accordingly, Hardt's Motion for Preliminary Injunction, ECF [10], is DENIED, and defendants' Motions to Dismiss, ECF [21] and [24], are GRANTED. This case is DISMISSED without prejudice and without leave to amend. All pending motions are dismissed as moot.

IT IS SO ORDERED.

DATED this 26th day of March, 2024.

_____
Adrienne Nelson
United States District Judge